

# In the Court of Criminal Appeals of Texas

---

No. WR-95,984-01

---

EX PARTE TRAVIS COBB,

*Applicant*

---

On Application for a Writ of Habeas Corpus
In Cause No. 2018CR11604-W1 in the 399th District Court
Bexar County

---

YEARY, J., filed a concurring opinion.

I concur in the result the Court reaches today. I write separately only to respond to the Presiding Judge's concurrence.

I have made the point on any number of occasions that to call a claim "actual innocence" that is predicated on the Court's opinion in *Ex parte Elizondo*, 947 S.W.2d 202, 209 (Tex. Crim. App. 1996), is a

misnomer. *See E.g.*, *Ex parte Cacy*, 543 S.W.3d 802, 804 (Tex. Crim. App. 2016) (Yeary, J., concurring); *Ex parte Chaney*, 563 S.W.3d 239, 286 (Tex. Crim. App. 2018) (Yeary, J., concurring); *Ex parte Warfield*, 618 S.W.3d 69, 74 (Tex. Crim. App. 2021) (Yeary, J., concurring). Note that each of these was a *concurring* opinion. I have no qualms about granting post-conviction habeas corpus relief to any applicant who can satisfy the current *Elizondo* standard. "But I would not necessarily call *that* applicant 'actually innocent' in doing so." *Warfield*, 618 S.W.3d at 74 (Yeary, J., concurring).

If I accurately understand Presiding Judge Schenck's concurrence, however, it seems like he advocates for possibly granting *post-conviction habeas corpus relief* based on a standard that is even *less* rigorous than that which the Court adopted in *Elizondo*. He seems to suggest that it could be appropriate to apply a level of confidence even less onerous than "clear and convincing evidence" to gauge whether, in light of newly available evidence, a rational jury would still have convicted an applicant. *See* Concurring Opinion of Presiding Judge Schenck at 4 ("I . . . recognize that the difference between a 'more likely than not' standard of review and a 'clearly and convincing' one seems ephemeral.").[1] If that is what he is suggesting, I cannot agree.

---

[1] Article 11.07, Section 4(a)(2) permits an applicant to bring a *subsequent* writ application when, "by a preponderance of the evidence," a violation of the United States Constitution has caused a jury to convict the applicant when no rational jury otherwise could have found him guilty beyond a reasonable doubt. TEX. CODE CRIM. PROC. art. 11.07, § 4(a)(2). But this "more likely than not" level of confidence only permits *a subsequent application to proceed* when there is an independent constitutional violation that causes the applicant to be convicted when he otherwise could not have been. It is, in other words, a gateway provision and does not speak to the appropriate level of

Presiding Judge Schenck also seems to invoke principles of federalism to justify his suggestion. *Id*. at 3.[2] He argues that we did not *have to* defer to the federal standard for proving "actual innocence," which serves in that system only as a "gateway" for federal review of independent constitutional error in state court judgments. I do not disagree with him, at least with regard to *that*. But evidence of "actual innocence" in that context provides only a mechanism or a vehicle—a "gateway," if you will—to obtain federal *review* [not merits-based relief] notwithstanding ordinary obstacles to such a review arising from procedural default or lack of exhaustion at the state court level, or from the fact that that the independent constitutional claim was raised in either a "successive" or an "abusive" federal writ application. *See*, *e.g.*, *Schlup v. Delo*, 513 U.S. 298, 318−19 & n.34 (1995) (describing "actual innocence" as an exceptional basis for reaching claims in federal habeas that have been procedurally defaulted in the state courts or brought repetitively or untimely in the federal court).

Such a federal applicant obtains *review* because of his showing of actual innocence, *but* he does not obtain *relief* on that basis. *Relief*, even in that system, is not obtained at a demonstration, to any level of

---

confidence that should be assigned to grant merits-based relief on a bare claim of so-called "actual innocence." *See* text, *post*.

[2] The Presiding Judge suggests that we *could* proceed to review a bare claim of "actual innocence" under whatever level-of-confidence standard we might deem appropriate as a matter of construing the Texas Constitution. Even if he is right about that—and I am not 100% certain that he is—it would not mean that we *should* establish an even lower standard than that which was adopted in *Elizondo*.

confidence, that the applicant *might be* innocent. Instead, relief is dependent on whether an applicant can show that his conviction was also sullied by some independent constitutional defect that probably *caused* the conviction of an innocent defendant.

A bare claim of so-called "actual innocence," in contrast [as we have in Texas], does not require any independent constitutional defect to be shown to justify relief. Instead, it is a merits-based showing of "actual innocence" *itself* that demonstrates a violation of the federal constitution. *Herrera v. Collins*, 506 U.S. 390, 417 (1993).[3] It is no surprise, then, that the United States Supreme Court has observed that "the threshold showing for such an assumed right would necessarily be

---

[3] *Herrera* itself did not explicitly recognize bare "actual innocence" as a due process violation; instead, it merely assumed a due process right to relief in such a circumstance, and simply held that "the threshold showing for such an assumed right would be extraordinarily high." 506 U.S. at 417. A bare majority of this Court nevertheless held that actual innocence could be asserted as an "independent" due process claim. *Elizondo*, 947 S.W.2d at 205. The Court did so largely on the strength of its earlier observation, in *State ex rel. Holmes v. Third Court of Appeals*, 885 S.W.2d 389, at 397 (Tex. Crim. App. 1994), that six members of the United States Supreme Court had opined, in separate opinions in *Herrera*, that execution (at least) of an inmate who was innocent of committing capital murder would violate due process. *Elizondo*, 947 S.W.2d at 204−05.

But since both *Holmes* and *Elizondo* were decided, when the Supreme Court was again faced with a claim of "freestanding innocence" in *House v. Bell*, 547 U.S. 518, 554−55 (2006), a majority of the Supreme Court once again declined to resolve whether such a claim may be entertained under the Due Process Clause. The Supreme Court once again concluded that, in any event, House had failed to satisfy *Herrera*'s undefined "extraordinarily high" burden. *Id*. Also, the only separate opinion in *House* failed to advocate that "actual innocence" should be recognized as a due process claim. *Id* at 556 (Roberts, C.J., concurring and dissenting) ("I do not believe that [House] has satisfied the higher threshold for a freestanding innocence claim, assuming such a claim exists.").

extraordinarily high." *Id.*

After all, an applicant claiming a right to relief on a bare claim of "actual innocence" would have presumably suffered no other constitutional defect in his trial that would standing alone render a retrial appropriate. It would only be the perception that the *result* of the trial was nevertheless unreliable—indeed, inaccurate—that would justify a retrial in such a case. Under those circumstances, we should be reasonably (if not perhaps closer to *absolutely*) certain that the result of the first trial, otherwise unsullied by any constitutional defect or deliberate prosecutorial misconduct, was nonetheless inaccurate before it would be appropriate to order a new one.[4]

As for myself, I have suggested, despite my reluctance to use the nomenclature of "actual innocence" in many instances, that I would still be compelled to vote to grant relief on due process or due course of law grounds when an applicant is able to meet the extraordinarily high

---

[4] As Judge Price aptly observed in a concurring opinion in 2011:

> [A]ctual innocence is concerned with the accuracy [as opposed to the *fairness*] of the original proceeding. If the applicant can produce new evidence that affirmatively demonstrates his innocence (and does not simply call the State's original evidence of his guilt into question), and, factoring that new evidence in with the trial evidence, the habeas court concludes by clear and convincing evidence that no rational jury would have convicted him, he is entitled to relief. That is a "Hurculean" burden, we have said, and it is meant to be. Otherwise, trials would cease to be the so-called "main event" of our adversarial criminal justice system, and the State would never be able to depend upon the finality of its convictions.

*Ex parte Robbins*, 360 S.W.3d 446, 463−64 (Tex. Crim. App. 2011) (Price, J., concurring) (footnotes omitted).

burden established in *Elizondo*. But any time a Court grants relief from a final judgment of conviction for a felony offense, it is a serious decision that deserves serious consideration, and it should never be handed out on a demonstration as easy to meet as the "preponderance of the evidence" standard. Instead, it is altogether fitting that the standard should be set at an "extraordinarily high" level—higher, indeed, than most of the mere "gateway" standards identified in the federal habeas corpus "cause and prejudice" jurisprudence.[5] And I cannot agree that the Court's decision to identify the appropriate level of confidence required for such relief in *Elizondo* to be "by clear and convincing evidence" was too rigorous.

With these observations, I respectfully concur.

**FILED:**                                   March 26, 2025
**PUBLISH**

---

[5] Presiding Judge Schenck seems to suggest that a level of confidence of "more likely than not" might be appropriate, and that, in any event, "the difference" between that and clear and convincing evidence "seems ephemeral." Concurring Opinion of Presiding Judge Schenck at 4. I disagree. If we simply ask ourselves if there is a better than even chance (>50%) that a jury, equipped with newly discovered exculpatory evidence, would not have found an applicant guilty beyond a reasonable doubt, that leaves as much as a 49.9999 . . .% chance that the jury would *still* have found him guilty beyond a reasonable doubt—and convicted him anyway. Even if some people would now be willing to describe such an applicant as "probably innocent," that is not a sufficient demonstration of inaccuracy as to justify overturning the result of what was otherwise a fair and constitutionally unblemished trial.